```
1                    IN THE UNITED STATES DISTRICT COURT
                        FOR THE DISTRICT OF COLUMBIA
2        - - - - - - - - - - - - - - - x
         THE UNITED STATES OF AMERICA,
3                                           Criminal Action No.
                        Plaintiff,          1:22-cr-00096-CKK-9
4                                           July 24, 2023
         vs.                                3:00 p.m.
5
         JOAN BELL,
6
                        Defendant.
7        - - - - - - - - - - - - - - - x
         _____
8

                        TRANSCRIPT OF MOTION HEARING
9            HELD BEFORE THE HONORABLE CHRISTOPHER R. COOPER
                        UNITED STATES DISTRICT JUDGE
10       _____

         APPEARANCES:
11       For the United States:      SANJAY HARIVADAN PATEL, ESQ.
                                     DOJ-CRT
12                                   Civil Rights Division, Criminal
                                     950 Pennsylvania Avenue, NW
13                                   Washington, DC 20004
                                     (202) 307-6188
14                                   sanjay.patel@usdoj.gov

15                                   JOHN CRABB, JR., ESQ.
                                     U.S. ATTORNEY'S OFFICE
16                                   Judiciary Center Building
                                     555 Fourth Street, NW
17                                   Washington, DC 20530
                                     (202) 252-1794
18                                   John.D.Crabb@usdoj.gov

19       For the Defendant:          STEPHEN F. BRENNWALD, ESQ.
                                     BRENNWALD & ROBERTSON, LLP
20                                   922 Pennsylvania Avenue, SE
                                     Washington, DC 20003
21                                   (301) 928-7727
                                     sfbrennwald@cs.com
22
         Court Reporter:             Lisa A. Moreira, RDR, CRR
23                                   Official Court Reporter
                                     U.S. Courthouse, Room 6718
24                                   333 Constitution Avenue, NW
                                     Washington, DC  20001
25                                   (202) 354-3187
```

2

```
1                    P R O C E E D I N G S

2              THE COURTROOM DEPUTY:  Criminal Case 22-096-9, The

3    United States vs. Joan Bell.

4              Counsel, would you please identify yourself for

5    the record starting with the government.

6              MR. PATEL:  Good afternoon, Your Honor; Sanjay

7    Patel and John Crabb on behalf of the government.

8              THE COURT:  All right.  Good afternoon.

9              MR. BRENNWALD:  Good afternoon, Your Honor;

10   Stephen Brennwald for Ms. Bell.

11             THE COURT:  All right.  Good afternoon both of

12   you, and Ms. Bell.

13             Mr. Brennwald, why don't you wait a second.

14             When you speak, for any of the attorneys, you can

15   take your -- or Ms. Bell, you can take your mask down.

16   Otherwise it makes it very hard, actually, for us to get a

17   record.

18             So we're here today to conduct what we call a

19   Faretta inquiry.  Mr. Brennwald, who has been appointed to

20   represent Ms. Bell, filed a motion to withdraw and indicated

21   that Ms. Bell would like to represent herself, and that was

22   the reason for his withdrawal. So we've set this hearing to

23   discuss the decision as to -- relating to what Ms. Bell is

24   evidently requesting.

25             Certainly this decision is a very important one,
```

1    and I need to confirm that you are competent, knowingly, and

2    voluntarily electing to represent yourself in this matter as

3    opposed to proceeding to trial with counsel, which presently

4    is set, in terms of your case, for September 6th.

5              So if I could just ask, Mr. Brennwald, in terms of

6    the request, is -- your understanding of it, and I'll ask

7    her, as well -- is your understanding it's just for the

8    trial, or is it for the -- now for the preparation for the

9    trial?  Or what's the extent of it --

10             MR. BRENNWALD:  Actually, Your Honor --

11             THE COURT:  -- from your discussions?

12             MR. BRENNWALD:  -- she wants to represent herself

13   going forward in the case.

14             THE COURT:  Okay.  And have you discussed with her

15   what's involved with going to trial and representing

16   herself?

17             MR. BRENNWALD:  Yes, Your Honor, briefly.  And I

18   also explained to her -- and maybe I was getting ahead of

19   myself, but I explained to her that the Court would probably

20   have me as standby counsel; that she would be in charge.

21   She would be the person doing the opening statement and

22   closing argument, questioning witnesses, but that I would be

23   there to answer any legal questions that she had.

24             But I would not butt in.  She could be in charge

25   of representing herself.

```
 1              THE COURT:  In terms of the discovery that's been

 2     provided in the case, have you shared that with Ms. Bell?

 3              MR. BRENNWALD:  We have not gone over a lot of

 4     discovery at this point, not with her.

 5              THE COURT:  You need to speak up.  I'm sorry.

 6     I've got a little bit of a cold.

 7              MR. BRENNWALD:  She and I have not gone over a lot

 8     of discovery.  I have it, obviously.

 9              We've talked about the case.  She obviously is

10     aware of what happened and what the situation is, but I will

11     obviously either share it with her or go over it with her.

12              I'll give it to her, obviously, so she can have it

13     as long as the Court allows me to.  I don't think this is a

14     situation like January 6th where I have to worry about

15     highly sensitive or sensitive discovery, but maybe -- if

16     there is any of that type of discovery, I will make sure we

17     do it the proper way.

18              THE COURT:  Okay.  All right.  Thank you.  I may

19     have some questions later.

20              So, Ms. Bell, I do want to ask you some questions,

21     so if you could come up.

22              And if I could -- if you could swear her in,

23     Ms. Patterson.

24              (Defendant sworn)

25              THE COURT:  You need to move the microphone down a
```

1    little bit and speak in a nice clear voice so I can hear

2    you.  We are obviously taking down a record.

3            So my understanding is, from what Mr. Brennwald

4    has said -- you have, obviously, a right to have counsel

5    represent you, and we've appointed somebody who has been

6    preparing your case.

7            Is there a particular reason why you want to

8    represent yourself at this point?

9            MS. BELL:  Yes.  But I do want to say that

10   Mr. Brennwald has been incredibly good, kind, and forthwith

11   in representing me, so I just highly commend him.  So I'm

12   not withdrawing his, you know, counseling and his

13   representing me because of anything negative.  It's all

14   positive.

15           I'm doing it because I want to go pro se, and the

16   reason is I firmly, with all my mind, heart, and soul,

17   believe that children in the womb before birth are true

18   human beings.  And because these children who I'm standing

19   in for -- that's why I was where I was on the day they

20   died -- have a right to due process of law.  They have a

21   right to a day in court.  They have a right to have a

22   representative in a court before they're executed because

23   they did not get that.  I do not want it for myself, and I

24   want to proceed just myself.

25           THE COURT:  Okay.  So let me explain something.

1    I'll go through questions which I need to ask, but the

2    charges that you have -- and I'll go over this much more

3    carefully in terms of what you've been charged with -- one

4    is conspiracy against rights, and the other is Freedom of

5    Access to Clinic Entrances Act.

6         So I want to make sure you understand -- and we'll

7    discuss this a little further, but we'll start out with

8    this -- that if I decide and permit you to proceed pro se, I

9    may not allow you to present some of the arguments or

10   evidence that you may want to present, which you've just

11   talked about.

12        For example, this case is not about whether

13   abortion or any other reproductive health service is morally

14   justified, does more harm than good, or is even lawful.

15   That's not what the two charges that you have are about.

16        It's about whether you and your co-defendants

17   prevented patients or employees from receiving or providing

18   abortion services and whether you did so because you thought

19   they were receiving or providing abortion services.  In

20   other words, it has to be around the abortion.

21        I will not allow you to discuss whether you

22   thought your actions were morally justified or whether you

23   think certain laws are immoral or unlawful or against God's

24   law, whatever.  Nor will I allow you to argue to the jury

25   that you should be acquitted because in your view your

1    behavior was justified, which is a jury nullification,

2    although your intent will be relevant at trial in terms of

3    why you went in, which is to prevent the abortion services.

4    Your motive, which you've just presented, is far less

5    relevant.

6         So do you still want to proceed without counsel?

7    You are not going to get up on the stand and just make the

8    statement that you just made.

9         MS. BELL:  That's good.  Because the babies can't

10   speak, I don't mind not speaking.  So I want to go forward

11   as pro se.

12        THE COURT:  Okay.  But you've just given me

13   the reason why you want to is because you want to be able

14   to present, as I understand it, your reasons in terms of

15   your -- your view in terms of the evil of abortion, in your

16   words, in terms of the babies that you are representing.

17        If you don't get to present that, is there any

18   reason why you would go pro se as opposed to have counsel

19   represent you where, frankly, having counsel represent you

20   is -- who is trained, who can present the evidence, and who

21   knows how trials work, if you're not going to be able to say

22   what you just said, if that's your motivation?

23        MS. BELL:  My first motivation -- that would be a

24   secondary motivation -- I wish I could speak on behalf of

25   the babies.

1          THE COURT:  I understand that.

2          MS. BELL:  If I'm not allowed to -- I'm sorry, go

3     ahead.

4          THE COURT:  No, go ahead.

5          MS. BELL:  If I'm not allowed to, I will -- I'm

6     happy to be silent like they are silent.  I'm happy to just

7     say what I'm allowed to say.

8          If I'm not allowed to, then I will be silent; but

9     I will do my best to represent them even in my silence.

10         THE COURT:  Well, it's not clear to me.  Silence

11    presumably means in terms of your getting up on the stand

12    and making the statement that you just did.  However,

13    obviously the charges are in terms of what needs to be shown

14    in the case.

15         It would seem, in terms of testing the

16    government's evidence, that -- would you not want to have an

17    attorney doing that?  I mean, leaving aside what your own

18    personal views about the evils of abortion are, would you

19    not want to have an attorney, trained and an expert,

20    represent you to challenge the government's evidence that

21    they have as opposed to you, who I assume -- I'll ask these

22    questions -- does not have that experience or training?

23    Would you not want to have that so you are in a position to

24    have the best defense that you can come up with?

25         MS. BELL:  I understand, and I think that's a

1    good -- a good argument.  It's a good presentation.

2             But still, I think I am called to try to be more

3    united with the children, and I think despite wonderful

4    expertise of the lawyer and the help he would be, for me, I

5    want to be more like the children and more unseen.

6             And I will cross-examine if someone said I was

7    violent because I'm a passivist.  I was in the civil rights

8    movement.  I was in -- never violent.  I'm against even the

9    whole thing of defund the police.  We have to have good

10   police.  I'm totally nonviolent.

11            And I will cross-examine.  If someone says I was

12   violent, I will cross-examine.  So I'm thinking --

13            THE COURT:  Okay.  But I'm just saying to you,

14   would you not -- if you're not going to be able to say some

15   of the things on behalf of the children, okay -- and I don't

16   know what you would say, but at least based on the statement

17   you just made there's a problem -- would you not still want

18   to have the cross-examination, which you can discuss with

19   your counsel as to what areas you think should be pursued,

20   and have him do it, who is better trained in terms of your

21   presenting the defense that you want to present?

22            MS. BELL:  At this point I feel that -- we've had

23   so many arguments for 50 years about the dignity of

24   children, the dignity of women, which I think they're

25   combined, true dignity of mothers and children.  And I think

1    at this point, after 50 years, I can serve the children best

2    by being closer to them, by being silent, like they are, for

3    most of the trial.

4            If I need to speak up, I will ask permission to

5    speak up.  And if I'm allowed to say what I would like to

6    say, I'll say it.  If I'm not allowed to, I'll be silent.

7            THE COURT:  But you understand that the focus of

8    the -- without getting into elements of what would have to

9    be proven by the government beyond a reasonable doubt, the

10   elements relate to in terms of your going into this

11   particular facility and taking measures that would prevent

12   the patients and/or the staff to be involved in the abortion

13   services.  It has nothing to do specifically with whether

14   abortion is good or bad.

15           So in terms of what the focus of the case is,

16   would you not still want to have someone who is learned in

17   this particular area and can focus on what the charges

18   actually are, which are different from what you have -- you

19   have decided is involved in the case?

20           MS. BELL:  Thank you, but I really want to be pro

21   se.  I feel this is what God wants me to take and what I

22   want to do for the babies.  Because if they're not

23   represented, I don't want to be represented.

24           THE COURT:  Well, they're not -- the issue for the

25   babies is actually not -- it's what you did in going into

1    the facility --

2         MS. BELL:  Uh-huh.

3         THE COURT:  -- that's at issue.

4         MS. BELL:  Yes, but I did it because -- I have a

5    full life.  I have seven grandchildren, little -- very

6    little, six under two years old.  I love to be home with my

7    kids, you know.  I have hippotherapy for children,

8    handicapped children.

9         I have a full life, but I don't mind being in jail

10   for 11 years if my being in jail can be a silent witness for

11   the babies that are not represented.

12        That's how I feel deep in my heart; so I'd rather

13   proceed pro se.

14        THE COURT:  All right.  Well, let me proceed then.

15   I have some questions that I do need to ask you.

16        MS. BELL:  Okay.

17        THE COURT:  So have you ever received any

18   treatment for any type of mental illness or emotional

19   disturbance?

20        MS. BELL:  No.

21        THE COURT:  Okay.  Do you take any kind of

22   medications?

23        MS. BELL:  Just high blood pressure.

24        THE COURT:  Okay.  Any reason in terms of that you

25   wouldn't be able to represent yourself in this matter, any

1     physical or other kinds of impediments?

2          MS. BELL:  No.

3          THE COURT:  Mr. Brennwald, any issues in terms --

4     from your perspective relating to her competency?  I'm

5     talking about mental or emotional competency, not legal.

6          MR. BRENNWALD:  No, Your Honor.  I've spoken with

7     Ms. Bell quite a bit, and she's a very good woman who has a

8     very good heart, and she is aware of what she's doing.

9          She's clear-headed.  She just has a strong passion

10    about this, and I think it would be an injustice to force

11    her to have counsel when she feels the way she does and

12    thinks the way she does.

13         THE COURT:  All right.  What level -- what is the

14    highest level of education you have, Ms. Bell?

15         MS. BELL:  Two semesters of college.

16         THE COURT:  Okay.  Have you been employed or had

17    work in the past or now?

18         MS. BELL:  Mainly with horses.  I raised horses

19    and trained horses.  I'm a horse woman.

20         THE COURT:  Okay.  Have you ever studied law,

21    either informally or in a formal way?

22         MS. BELL:  No, I have not.

23         THE COURT:  So you haven't taken any kind of

24    classes or anything else in terms of -- that would be

25    considered about law, whether it's criminal or just in

```
 1    general?

 2              MS. BELL:  No, I have not.

 3              THE COURT:  Have you ever represented yourself in

 4    a criminal matter?  I believe in some instances --

 5              MS. BELL:  Yes, I have.

 6              THE COURT:  Okay.  And what cases did you

 7    represent yourself in?

 8              MS. BELL:  Similar to this doing nonviolent,

 9    prayerful rescues back in the '70s and '80s and '90s.

10              THE COURT:  I'm sorry, I missed that.

11              MS. BELL:  Back in the '70s, '80s, and '90s when I

12    was young.

13              THE COURT:  Okay.  And were the charges relating

14    to abortion issues, or something else?

15              MS. BELL:  Yes.  It was trespass, but nonviolent.

16              THE COURT:  How many cases have you represented

17    yourself in?

18              MS. BELL:  Probably about four.

19              THE COURT:  Okay.  Do you remember what the

20    charges were or the type of charges?

21              MS. BELL:  Basically trespass.

22              THE COURT:  Trespass, okay.

23              And these were trials, I take it?

24              MS. BELL:  Yes.

25              THE COURT:  Okay.  And were they jury trials or a
```

1    judge made a decision?

2            MS. BELL:  I think -- at least a couple were jury,

3    and probably a couple bench.

4            THE COURT:  Okay.  And can you recall what the

5    verdicts were?

6            I guess were you acquitted and found not guilty or

7    found guilty?

8            MS. BELL:  Yes, I think at least once found not

9    guilty, but probably found guilty more than not.

10           THE COURT:  And when would have been the last time

11   you represented yourself roughly?  A year, in terms of a

12   year.

13           MS. BELL:  It would have been before I got

14   married.  I was married 31 years ago, so it would have been

15   like three years before that; 33, 34 years ago.

16           THE COURT:  Okay.  I'll do the math at another

17   time.

18           Okay.  Do you understand that you're charged with

19   two crimes?  They're felonies.  So trespass is a

20   misdemeanor.  Felonies are more serious crimes.

21           Count 1 is conspiracy against rights, 18 USC

22   Section 241.

23           Count 2 is Freedom of Access to Clinic Entrances

24   Act, 18 USC Sections 248(a)(1) and (2).

25           So do you understand that if you're found guilty

1    of the crime charged in Count 1, which is a felony, and

2    that's the conspiracy against rights, that the maximum

3    penalty of incarceration in terms of jail time is ten years

4    in jail?

5           On release from any term of incarceration, I could

6    also impose a term of supervised release.  You'd be in the

7    community with different conditions, and that could be up to

8    three years.

9           The maximum fine that could be imposed is

10   $250,000.

11          Do you understand the penalties?

12          MS. BELL:  Yes, I do.

13          THE COURT:  All right.  I would also have to

14   impose a special assessment of $100, and I can't waive that

15   whether you have the financial ability or not.

16          It's also not clear whether you would be --

17   probation would be available in that particular crime.

18   You'd have to do the advisory Sentencing Guidelines.

19          The second one is -- do you understand, if you're

20   found guilty of Count 2 -- this is also a felony -- the

21   maximum penalty for incarceration or jail time is ten years

22   in jail?  On release from any term of incarceration, again,

23   I could also impose a term of supervised release of one to

24   three years, I believe is correct.

25          Counsel, am I wrong about something?

1          MR. PATEL:  Your Honor, Count 2 is a misdemeanor

2     offense.  It's punishable by up to one year in prison.

3          THE COURT:  Oh, okay.  I thought that was a felony

4     because they argued in the papers that it was.

5          MR. PATEL:  With respect to another matter that

6     was before Your Honor there was an information charging a

7     felony violation of 248.  But as charged in the indictment,

8     it's a misdemeanor offense.

9          THE COURT:  Okay.  Then the penalties would be

10    what?

11         MR. PATEL:  Up to one year in prison, Your Honor,

12    $10,000 in fines.

13         THE COURT:  Okay.  And would she be eligible

14    for -- supervised release would presumably apply.  Would she

15    be eligible for probation?

16         Would she be eligible for probation?  Or do you

17    know?

18         MR. PATEL:  I don't believe she would.  According

19    to my calculation, Your Honor --

20         THE COURT:  If you could take the mask down.

21         MR. PATEL:  I'm sorry.  Based upon my guideline

22    calculation she would not, Your Honor.

23         THE COURT:  Okay.  But supervised release would

24    apply.

25         MR. PATEL:  Yes.

 1              THE COURT:  Is this the same charge for all of

 2     them, both in terms of the first case as well as the second?

 3              MR. PATEL:  Yes.

 4              THE COURT:  Can I ask why people are filing

 5     something and arguing that it should have been a

 6     misdemeanor?

 7              MR. PATEL:  I can't explain that, Your Honor.

 8              THE COURT:  Anyway, in one of the filings from

 9     defense counsel -- not you -- it indicated that they should

10     have been charged with a misdemeanor, when it sounds like

11     they were.

12              Okay.  Well, then I'm wrong.  It's not a felony.

13              MR. BRENNWALD:  I always thought that the second

14     charge was a misdemeanor, and I was surprised to hear the

15     Court say that.

16              THE COURT:  Well, someone filed something that has

17     papers that indicate in terms of arguing that they should

18     not -- should have been charged as a misdemeanor and not as

19     a felony.  I assume that that was the one.

20              All right.  Okay.  So there's one felony, and then

21     there's one misdemeanor.  So let me go over the misdemeanor,

22     which is a less serious charge.

23              A maximum one year in jail.  A maximum fine of

24     $10,000.  It's unclear whether probation would apply or not.

25     Supervised release would apply, and you'd also still have

1    the special assessment of $100, which, again, can't be

2    waived.

3            So those set out the penalties.  And do you

4    understand, if you're found guilty of both of the crimes,

5    that I could order that sentencing be served consecutively;

6    that is, one after another?  I don't have to, but I can.  Do

7    you understand that?

8            MS. BELL:  I do.

9            THE COURT:  Do you understand that there are

10   advisory Sentencing Guidelines that may affect your sentence

11   if you're found guilty?  Now, the statutory maximum, I

12   cannot sentence you above that; so it would have to be that

13   or something lower.

14           But advisory Sentencing Guidelines would be

15   calculated.  Do you understand that?

16           MS. BELL:  Yes, I do.

17           THE COURT:  Do you understand if you represent

18   yourself you're on your own?  I mean, I can't tell you how

19   to or advise you how to try the case, how to question

20   witnesses, or do anything else.  So if you do something;

21   they object; I sustain it; you're left -- I can't tell you

22   what to do.  Do you understand that?

23           MS. BELL:  I understand.

24           THE COURT:  Okay.  Are you familiar with the

25   Federal Rules of Evidence?

```
1              MS. BELL:  No.

2              THE COURT:  Do you understand that the Federal

3    Rules of Evidence -- that's rules of evidence that govern

4    what evidence can or cannot be introduced or may or may not

5    be introduced at trial.

6              In representing yourself you're going to have to

7    abide by those technical rules.  They're not going to be

8    relaxed for your benefit simply because you're representing

9    yourself pro se.  Do you understand that?

10             MS. BELL:  I understand.

11             THE COURT:  Have you looked at those at all to see

12   what are involved?

13             MS. BELL:  No, but I accept them.

14             THE COURT:  Have you looked at any of the motions

15   that have been filed in the case?

16             MS. BELL:  I have not.

17             THE COURT:  So you don't know what --

18   Mr. Brennwald, remind me, did you file something or join?

19             MR. BRENNWALD:  I joined Mr. Cannon's Motion to

20   Dismiss Count 1 pursuant to the Dobbs opinion.

21             THE COURT:  Okay.  Are there any others?  But you

22   would be responding presumably to some of the other motions

23   in limine.

24             MR. BRENNWALD:  I believe so.  Off the top of my

25   head I don't know, but I joined whatever motions are out
```

1      there.

2              THE COURT:  Okay.  So if there's some additional

3      motions that would be filed, and there may be around

4      exhibits, are you prepared to file a response to those,

5      Ms. Bell?

6              MS. BELL:  I would certainly ask the other

7      attorneys if I could join their motions.

8              THE COURT:  Well, let's assume the government

9      files it.  In terms of the government filing something,

10     ordinarily defense would respond in some way.

11             MS. BELL:  If I see the motion, and I see

12     something I think is not moral or not apropos to what

13     happened or it wasn't correct, I would file a motion -- you

14     know, I would try to figure out how to file a motion against

15     it.  I would ask somebody how to do it.

16             THE COURT:  Okay.  Unfortunately morality is not

17     going to work in terms of whether evidence comes in or not.

18             MS. BELL:  Well, truth then, if there's something

19     that sounds like it was not true.

20             THE COURT:  Okay.  Do you understand that those

21     rules -- are you familiar with the Federal Rules of Criminal

22     Procedure, which is something different?  These are rules

23     that govern the way a criminal action is tried in federal

24     court.  And, again, you would be bound by those rules, and

25     they're not going to be relaxed for your benefit.

1          MS. BELL:  I understand.  And, in fact, I probably

2    would let all that slide because whatever happens in the

3    court is not my main focus.  I kind of accept everything

4    that would happen as it flows.

5          And if I'm reading something that I think is

6    objectionable to the truth or the facts, I would, you know,

7    seek to respond and ask if I could respond probably in

8    writing at the time.  And if I didn't do it soon enough, I

9    accept that.

10          THE COURT:  Okay.  I have to advise you that in my

11    opinion a trained lawyer would defend you far better than

12    you could defend yourself.  Generally it's not wise to try

13    and represent yourself where the facts of this particular

14    case are different than what your interest is.

15          Mr. Brennwald.

16          MR. BRENNWALD:  Your Honor, first of all, it's not

17    a good idea to represent yourself even if you are a trained

18    lawyer.

19          But secondly, I just want the Court to know -- the

20    Court may not know this -- Ms. Bell, I found out after I was

21    appointed to represent her, is an icon in this community.

22    She's been involved in the movement for decades, and she's

23    had quite a few cases around the country.

24          She's talked to a lot of lawyers.  She's talked to

25    a lot of people who are involved in this.  And if there's

1    ever anybody -- just for the record, if there's ever anybody

2    who could represent themselves in a case like this pro se,

3    it would be Ms. Bell because of her years of involvement in

4    all of these movements and cases around the country.

5            THE COURT:  Well, movements are one thing in terms

6    of protests, et cetera, and I understand that.  You

7    certainly have a right to do that.  My question is -- that's

8    a little different than what happens in a courtroom.

9            My concern is, although you at this point seem to

10   have one purpose, which unfortunately doesn't totally fit

11   the case, but -- in terms of what you're talking about.  But

12   I am concerned that you have evidently not looked at all of

13   the evidence, and you're unfamiliar with court procedures

14   and rules of evidence.

15           MS. BELL:  Yes, I have heard people, you know,

16   friends, co-defendants, speak about things that they saw,

17   and I'm -- my interest is not in that, you know.

18           When you're part of a group or you are a part in a

19   group that has been discriminated against, those things

20   happen, you know.  And I'm not concerned with that as far as

21   myself because I'm representing a group that has no

22   representation.  So however that goes, I accept.

23           And I have enough respect for the Court that I

24   think that they would kind of advise me, you know, the Court

25   would advise me you can't do that or you shouldn't be doing

1    that, and I will just accept it, you know?  I'll either say

2    I'm going to be silent on this or whatever.

3              THE COURT:  I'm sorry, go ahead.

4              MS. BELL:  I'm sorry.

5              THE COURT:  No, go ahead.

6              MS. BELL:  I just think, after 50 years of

7    abortion, all the medical facts known -- the babies are

8    educated in the womb.  I don't know if most people know

9    that.  You can educate a baby in the womb.

10             At 12 weeks a baby can respond to stimuli and

11   think, respond; beep, prick, beep, prick, and beep and no

12   prick and the baby recoils.  And they test with a prick at

13   10 weeks, 12 weeks.  I don't think most people know that.

14   I'm trying to represent children who are not represented.

15             And I can't say I don't care what happens to --

16             THE COURT:  I understand.

17             MS. BELL:  I'm sorry.

18             THE COURT:  I understand your strong feelings, and

19   obviously you're a strong believer in your views.  This has

20   nothing to do with your views other than what you can

21   present in court.  That's my decision in terms of that.

22             I just want to make sure that you fully understand

23   your -- these are serious charges; one is a felony; one is

24   not -- in terms of making sure that you do understand that

25   you may wind up getting convicted because you don't know

1     what is -- what you're supposed to do in a court.  And

2     obviously that's not what judges or anybody else wants.  We

3     want you well represented and effectively represented.

4          And my concern is that you -- although you don't

5     seem to be concerned about the effectiveness of your

6     defense, I am concerned that you get defended effectively,

7     and I'm concerned about whether or not you can actually do

8     that.

9          MS. BELL:  I deeply respect that.  And it's good,

10    so good, that judges do care.  I really respect that.

11         As far as consequences to me, I'm in God's hands.

12    I just want to, in a small way, represent the babies, mostly

13    silently; and whatever happens to me, I can accept that.  My

14    family can accept it.

15         And the other thing I need to let you know of any

16    conscience, I have never -- in my many years in the Pro Life

17    movement, over 50 years, I never accepted probation.  Even

18    though I've been given probation and held before the Court

19    10, 20 times --

20         THE COURT:  That doesn't surprise me.

21         MS. BELL:  -- I don't accept it because I've done

22    nothing wrong.  So I won't participate.  I can be put in

23    jail, and I have been.  Over six years in jail all together.

24         Sometimes I don't cooperate in jail in a

25    nonviolent way.  Like I don't go out to the yard so the

1    guards don't have to take me back in; so I stay in solitary,

2    whatever.  I can accept all of that.  I don't want to cause

3    harm to anyone.

4            But I understand the consequences.  I can accept

5    them.  But I can't pay a fine in conscience, and I can't --

6    I can do more jail time that's done to me, and I can accept

7    that.  I just want to represent these little children who I

8    love.

9            THE COURT:  All right.  Is this a decision that's

10   voluntary?  Did anybody coerce you in any way, or is this

11   totally your own decision?

12           MS. BELL:  Yes, it is, absolutely.

13           THE COURT:  And you've indicated that it doesn't

14   appear to be based on any dissatisfaction with your current

15   counsel; is that correct?

16           MS. BELL:  Absolutely correct.

17           THE COURT:  Okay.  Does the government, before I

18   make any kind of rulings, wish to bring anything to my

19   attention?  Ask any questions or anything else?

20           MR. PATEL:  No, Your Honor.

21           THE COURT:  Okay.

22           MR. BRENNWALD:  Can I inform Ms. Bell that the

23   Court -- the way these cases always turn out is that the

24   Court would appoint standby counsel.  I told her I would be

25   there.  I would not intrude in her decisions.  I would not

1    try to force my thoughts on her thoughts; but that if she

2    had any kind of questions about any of the rules or evidence

3    or things like that, I'll be near her as a standby counsel.

4              THE COURT:  Well, which is certainly something

5    that I would have done.

6              All right.  Ms. Bell, in light of the penalty that

7    you might suffer if you're found guilty and the difficulties

8    of representing yourself, which you seem to have some

9    appreciation of, do you still desire to represent yourself

10   and give up your right to be represented by an attorney?

11             MS. BELL:  Yes, I do.

12             THE COURT:  All right.  Let me take about five

13   minutes and just go over one quick thing before I make my

14   final ruling.  I'll be right out.

15             Don't disappear on me.  Let me just look at one

16   thing.

17             (Recess taken)

18             THE COURT:  All right.  Did you want to say

19   something?

20             MR. PATEL:  Yes, Your Honor, if I could make one

21   correction.  You had asked me what the penalties were for

22   Count 2, the misdemeanor offense.  I misspoke when I said it

23   was a $10,000 fine.  It's, in fact, a $100,000 fine.

24             THE COURT:  All right.

25             So, Ms. Bell, does that make a difference?

```
 1                 MS. BELL:  No.  No, Your Honor.

 2                 THE COURT:  All right.  As I understand it,

 3        Ms. Bell, in essence you've decided not to present a defense

 4        since you can't state the grounds that you've just did, or

 5        at least I've indicated that you can't, but you would be

 6        defending in terms of the government's -- challenging the

 7        government's evidence.  Is that inaccurate?

 8                 MS. BELL:  Only that evidence that I think that,

 9        from what -- having been present during the whole --

10                 THE COURT:  In terms of what occurred actually.

11                 MS. BELL:  Like if they said we hit somebody or

12        harmed somebody, I would definitely challenge that.

13                 THE COURT:  Okay.  What I'm trying to -- it's

14        unusual to have somebody decide to represent themselves and

15        then not present a defense, which is what I was looking at.

16                 So as I understand it, it is that you've decided

17        not to present a defense because of the grounds you would

18        like to indicate -- what you've said to me I've indicated to

19        you is not what you would be able to state in court -- but

20        that you would look at the government's evidence, which

21        relates to what occurred in terms of factually, in going in

22        and in the facility that you would -- if appropriate, you

23        would be challenging the government's evidence; is that

24        correct?

25                 MS. BELL:  Only --
```

1          THE COURT:  I'm trying to figure out how you're
2     going to defend yourself.
3          MS. BELL:  One matter would be if we were accused
4     of hitting someone --
5          THE COURT:  Okay.
6          MS. BELL:  -- or harming someone, and that's -- we
7     don't do that, and I would challenge that.
8          Anything else, I want to be silent no matter what
9     they say about me, you know?
10          THE COURT:  Okay.  It is unusual --
11          MS. BELL:  I'm nonviolent.
12          THE COURT:  I'm sorry?
13          MS. BELL:  I'm nonviolent.  If they're going to
14     accuse me of being violent, that gives a bad message.  We
15     should never be violent, no matter what.
16          And our -- the people I work with, we have an
17     absolute rule.  If someone's beating you up, you can't grab
18     someone and pull them off you.  You can't touch anyone.  You
19     can lay your body over theirs.  I think that's what happened
20     with Jay, if he did any -- if he did accidentally bump
21     someone.  You can put your body in front of somebody and
22     take the blows for someone.  You can't touch the attacker.
23     You can lay your body.
24          We're firm on that.  It's been -- I've been doing
25     it for 50 years.  I would challenge if they say we tried to

1    hurt anyone.

2              THE COURT:  Okay.  So as I understand it, though,

3    it basically comes down to you're going forward to trial.

4    You'll represent yourself.  But unless they come up with

5    something that you think factually is incorrect, you're not

6    planning on presenting a defense; is that correct?

7              MS. BELL:  Correct, other than to make the

8    statement that babies don't have --

9              THE COURT:  Okay.  That's a statement that you're

10   unlikely to be able to state to the jury --

11             MS. BELL:  Okay.

12             THE COURT:  -- either in an opening, closing, or

13   on the stand.

14             MS. BELL:  I understand.  Then I think the very

15   next best thing I can do is be silent like the babies are,

16   and let everyone do whatever they want with me like they do

17   with the babies.

18             THE COURT:  Okay.  And what I'm trying to do is to

19   get -- it is unusual that you have a defense to represent

20   yourself when basically what you plan on doing is not

21   representing and not presenting a defense at all.  I just

22   want to make sure on the record that I have it correct.  Is

23   that accurate?

24             MS. BELL:  That's correct.

25             THE COURT:  All right.  I think, Ms. Bell, based

1    on what information you've provided and what my review of

2    the case law is, that you have a constitutional right to

3    represent yourself and decide how you want to represent

4    yourself.  The Supreme Court has required that, quote, In

5    order to represent yourself, the accused must knowingly and

6    intelligently forgo the assistance of counsel, which would

7    be Mr. Brennwald; and the D.C. Circuit has explained that

8    under *Faretta*, quote, A defendant has a constitutional right

9    to proceed without the counsel guaranteed by the Sixth

10   Amendment when the defendant unequivocally elects to do so

11   and where that election is voluntary, knowing, and

12   intelligent.

13            So I take it that you know what you're doing; is

14   that correct?

15            MS. BELL:  That's correct.

16            THE COURT:  You're doing it voluntarily?

17            MS. BELL:  Yes, I am.

18            THE COURT:  Okay.  And there's no indication that

19   you're not competent to make this decision, so based on your

20   representation to me today -- evidently you have represented

21   yourself in the past and been involved in other criminal

22   trials, among other things -- I find that you've satisfied

23   the requirements.  I find that you have -- your decision to

24   proceed without counsel is unequivocal.  You've made that

25   decision voluntarily, knowingly, and intelligently, so I'll

1    permit you to represent yourself.

2            I will appoint Mr. Brennwald as standby counsel,

3    which means he's just there.  He will not interfere, but he

4    is there to provide you with advice, if things come up,

5    about legal issues that you may wish to question him or ask

6    him about so you know what -- you know, something that's

7    come up legally that you don't know about, to be able to

8    discuss it with him.

9            MS. BELL:  I would rather not have someone stand

10   by, even though I respect him so much.  But if you appoint

11   him, I know he won't volunteer anything unless I ask him.

12           THE COURT:  He will not -- he's not going to

13   contravene my orders.

14           MS. BELL:  Okay.

15           THE COURT:  I'll appoint him also, if need be, if

16   at some point I determine during the trial that you are no

17   longer permitted to proceed pro se for some reason, then he

18   is available to proceed.

19           I would encourage you to take a look at what the

20   evidence is from Mr. Brennwald in terms of what's been

21   provided so that you know precisely what the government is

22   bringing up.

23           MS. BELL:  Thank you so very much.

24           THE COURT:  All right.  If there's nothing

25   further, then I think I'll see you all back on Friday.

1          MR. BRENNWALD:  Thank you, Your Honor.

2          THE COURT:  All right.  If there's nothing else?

3     I take it there isn't from the government or anybody else.

4          No?  Okay.  Then the parties are excused.

5                    (Whereupon the hearing was

6                     concluded at 3:49 p.m.)

7

8              **CERTIFICATE OF OFFICIAL COURT REPORTER**

9

10         I, LISA A. MOREIRA, RDR, CRR, do hereby

11    certify that the above and foregoing constitutes a true and

12    accurate transcript of my stenographic notes and is a full,

13    true and complete transcript of the proceedings to the best

14    of my ability.

15       Dated this 26th day of July, 2023.

16

17                              /s/Lisa A. Moreira, RDR, CRR

18                              Official Court Reporter
                                United States Courthouse
19                              Room 6718
                                333 Constitution Avenue, NW
20                              Washington, DC 20001

21

22

23

24

25