RECEIVED BY CHAMBERS
9/5/23

LEAVE TO FILE GRANTED
Judge CKoller-Kotelly 9/5/23

RECEIVED
SEP 05 2023
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA    *
                              *

     v.                           *

                                    *    No. 22-CR-00096-CKK

JONATHAN DARNEL,          *

JEAN MARSHALL,           *

JOAN BELL,                  *    *

*Defendants.*               *

## EMERGENCY MOTION FOR TRANSFER OF TRIAL

COMES NOW Joan Bell, Defendant *pro se*, and moves this Court to transfer the trial in the above case to another District. This request is made pursuant to the Fifth Amendments's Due Process Clause, the Sixth Amendment, and Federal Rule of Criminal Procedure 21(a). In support of her request, Ms. Bell shows this Court as follows:

**Background**

For actions she undertook on October 22, 2020, Defendant Joan Bell ("Defendant"), is charged with Conspiracy Against Rights (18 U.S.C. § 241) and with violating the Freedom of Access to Clinic Entrances Act (18 U.S.C. § 248(a)(1)). Five co-defendants in this case were recently tried separately, and were found guilty on August 29, 2023, resulting in much publicity regarding the guilt of said co-defendants.

1

## Argument

In order to insure a defendant's right to a fair trial which is free from prejudice, Federal Rule of Criminal Procedure 21(a) provides:

> (a) For Prejudice. Upon the defendant's motion, the court must transfer the proceeding against that defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there.

This Rule permits a defendant to request a transfer of a trial to another venue in a criminal case when she believes a fair and impartial jury cannot be obtained in the district where the alleged crime was committed.

District courts have discretion when deciding whether to change venue due to prejudicial pretrial publicity. The standards governing a change of venue derive from the due process clause of the Fourteenth Amendment, which safeguards a defendant's Sixth Amendment right to be tried by a panel of impartial, "indifferent" jurors. *Irvin v. Dodd*, 366 U.S. 717, 722 (1961). Furthermore, the Supreme Court of the United States recognizes instances where a trial court may be unable to seat an impartial jury, due to prejudicial pretrial publicity or inflamed community atmosphere. In such situations, due process requires that the trial court grant a defendant's motion for a change of venue. *Rideau v. Louisiana*, 373 U.S. 723, 726 (1963). Granting motions to transfer venue in these situations guarantees the

fundamental fairness of the defendant's trial. *Murphy v. Florida*, 421 U.S. 794, 799 (1975).

Courts observe two tests for change of venue motions based upon prejudicial pretrial publicity: "actual prejudice," as discussed in *Irvin v. Dodd*, *supra*, and "inherent prejudice," as explained in *Murphy v. Florida*, *supra*. To justify a change of venue under Rule 21(a), defendants must meet one of these two standards.

Ms. Bell's challenge to venue in this instance rests on the second test, the "inherent prejudice" standard. To establish that pretrial publicity prejudiced an accused without an actual showing of prejudice in the jury box, she must show that (1) widespread, pervasive prejudice and prejudicial pretrial publicity saturates the community, and (2) there is a reasonable certainty that the prejudice prevents the defendant from obtaining a fair trial. *See Sheppard v. Maxwell*, 384 U.S. 333, 363 (1966) ("[W]here there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates, or transfer it to another county not so permeated with publicity.")

In 2016, the Washington City Paper reported that 76 percent of all registered voters in the District of Columbia are Democrats.[1]   Further, the Pew Research Center has identified that 80 percent of Democrats say abortion should be legal in

---

[1] https://washingtoncitypaper.com/article/443538/how-many-registered-voters-does-d-c-have/

all or most cases.[2]  It is thus reasonable to conclude that of any jury pool that can be formed in Washington, D.C., six out of ten already believe that abortion is, or should be, a right that is supported by government nearly all of the time.   Jury selection for the defendants who were already tried and convicted — Lauren Handy, John Hinshaw, Heather Idoni, William Goodman, and Herb Geraghty — took a whole week, because of the struggle to find impartial jurors.[3]  Since all five defendants were found guilty on August 29, 2023 — just seven days before the beginning of Ms. Bell's trial, there has been massive publicity of the guilty verdict, and she (and her co-defendants) will now be tried in the midst of an overwhelmingly inflamed community atmosphere where they will be presumed guilty by reason of merely being associated with the defendants already found guilty.[4]

---

[2] https://www.pewresearch.org/religion/fact-sheet/public-opinion-on-abortion/

[3] https://www.washingtonpost.com/dc-md-va/2023/08/12/abortion-trial-jury-selection-lauren-handy-clinic-blockade-fetuses/

[4] This recent publicity, over the last month of the trial, builds upon prior articles which were inflammatory. A sampling:

**March, 2022:** Ms. Bell and eight other defendants indicted for blocking abortion clinic; https://www.nytimes.com/2022/03/30/us/abortion-clinic-dc-nine-charged.html; https://www.nbcnews.com/politics/justice-department/nine-anti-abortion-protesters-indicted-allegedly-blocking-dc-clinic-rcna22257.

**April 2022:** Retrieval of 115 human bodies by Ms. Bell's codefendant Ms. Handy from Washington Surgi-Clinic's medical waste truck; https://www.usatoday.com/story/news/nation/2022/04/06/washington-anti-abortion-fetus/9483526002/; https://www.insider.com/washington-dc-anti-abortion-activists-say-took-buried-115-fetuses-2022-4; https://thehill.com/policy/healthcare/3260414-anti-abortion-activists-claim-they-had-115-fetuses/

**February 6, 2023:** Judge suggests abortion is constitutional right protected by Thirteenth Amendment;  https://thehill.com/regulation/court-battles/3847032-federal-judge-suggests-

Federal Rule 21(a) "is intended for cases in which prejudice in the community will make it difficult or impossible to select a fair and impartial jury." CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 342 (1982). A "critical factor" in determining whether pretrial publicity is likely to affect an accused's right to a fair trial is the *recency* of the publicity in relation to the trial. *Wansley v. Slayton*, 487 F.2d 90, 93-94 (4th Cir. 1973) (citing *Beck v. Washington*, 369 U.S. 541, 556 (1962)). In *Beck*, a lapse of nine and a half months was considered sufficient time for the impact of prejudicial publicity to subside. In *United States v. Bowe*, 360 F.2d 1, 11 (2d Cir. 1966), cert. denied, 385 U.S. 961, (1966), reh'g denied, 386 U.S. 969 (1967), publicity that was twelve weeks old at the time the jury was empaneled was considered to be sufficiently removed in time for the publicty to wane in jurors' minds.

Here, the extreme publicity began one week ago, is overwhemingly biased toward the guilt of remaining defendants, including Bell, and has and will continue through this trial. While the inherent prejudice principle is reserved for an extreme situation, and the burden placed upon defendant to show that pretrial publicity deprived her of her right to a fair trial is a heavy one, the present case presents just such an extreme situation.

---

abortion-may-still-be-protected-by-13th-amendment/;
https://www.politico.com/news/2023/02/06/federal-judge-constitutional-right-abortion-dobbs-00081391; https://www.cnbc.com/2023/02/06/supreme-court-abortion-ruling-questioned-by-judge.html

Courts also factor in the difficulty of the jury to acquit in the face of prejudicial and inflammatory exposure " ... when there is such identification with a community point of view that jurors feel a sense of obligation to reach a result which will find general acceptance in the relevant audience." *United States v. McVeigh*, 918 F. Supp. 1467, 1473 (W.D. Okla. 1996). This is true here, where the vast majority of D.C. residents support "abortion rights," as shown above, and are now being told that a jury drawn from their community has already determined that Bell's codefendants are guilty of violence against women. (*e.g.*, "One nurse at the clinic suffered a severe sprained ankle." [5])

Press reports here have been so one-sided as to make a fair trial in Washington, D.C. impossible for Ms. Bell.  Repeatedly, the headlines have stated "Anti-abortion activists, including one who kept fetuses, convicted of illegally blocking DC clinic" or nearly identical language.[5]  *The Washington Post* has continually followed the trial of Lauren Handy *et al.*, the codefendants tried just this past month, and reported that "anti-abortion activists ... violated federal law when they used chains, bike locks and ropes to blockade the Washington Surgi-Clinic in

---

[5] https://abcnews.go.com/US/wireStory/anti-abortion-activists-including-fetuses-convicted-blocking-dc-102661391; https://apnews.com/article/abortion-activists-clinic-blockade-trial-fetuses-b49db7f6b6a0a073a6a2f37b446bce53; https://thehill.com/regulation/court-battles/4179209-anti-abortion-activist-who-kept-fetuses-at-home-convicted-of-blocking-access-to-dc-clinic/; https://www.courthousenews.com/anti-abortion-activists-including-one-who-kept-fetuses-convicted-of-illegally-blocking-dc-clinic/; https://www.theguardian.com/us-news/2023/aug/29/lauren-handy-anti-abortion-convicted-blockading-clinic; https://www.washingtonpost.com/dc-md-va/2023/08/29/lauren-handy-abortion-blockade-guilty/

October 2020. The trial for a second group of defendants ... from the same blockade is scheduled to begin next week."[6]   Again, "defendants used force or violence to block access to the clinic." [5]

The public has been told that "They planned their crime carefully, to take over that clinic, block access to reproductive services and interfere with others' rights. The idea of deliberately breaking the law, to them, was sexy." (quoting Assistant U.S. Attorney John Crabb).[5]   A consistent bias and preference for the government's case, as opposed to the accused, is evidenced by consistent quotation of prosecutor rather than defense attorney arguments concerning the defense of others and duress from knowing that human life is being terminated.

Further inflaming potential jurists is the continual reporting of the fact that D.C. police discovered five fetuses in a Capitol Hill rowhouse basement where Handy had been staying.[7]   Although this has nothing to do with the instant case, the

---

[6] https://www.washingtonpost.com/dc-md-va/2023/08/29/lauren-handy-abortion-blockade-guilty/

[7] https://www.wusa9.com/article/news/crime/anti-abortion-activists-who-blockaded-dc-clinic-found-guilty-on-all-counts-lauren-handy-john-hinshaw-heather-idoni-herb-geraghty-william-goodman/65-9101a154-5631-4ed6-96d1-767049b42bb1.  See the continuous coverage, *e.g.,* **describing defendants as "vigilantes,"** https://www.wusa9.com/article/news/crime/judge-bars-vigilante-defenses-ahead-of-anti-abortion-activists-trial-lauren-handy-heather-idoni-herb-geraghty-fetuses-conspiracy-against-rights/65-9e732e8f-37cb-4059-9591-8703c865b792; **that they planned more "clinic invasions,"** https://www.wusa9.com/article/news/crime/anti-abortion-activist-lauren-handy-planned-two-more-clinic-invasions-in-january-doj-says-dobbs-roe-fetuses-fetus-maryland-progressive-uprising/65-6efec64d-286d-4902-86dd-c90367e5f1c5, **and that a "patient ... collapsed on the floor outside the clinic in pain while her husband begged the activists to let her inside,"** https://www.wusa9.com/article/news/crime/anti-abortion-activists-who-blockaded-dc-clinic-found-guilty-on-all-counts-lauren-handy-john-

7

press has continually included this inflammatory fact, that Handy was "storing fetal remains," the effect of which is to smear defendents as persons who gruesomely steal dead fetuses and keep them in their homes.

Local news WUSA9 has *directly linked* Ms. Bell to the convicted Ms. Handy, and highlighted that Ms. Bell will be tried next: "On the day of the clinic blockade, Handy and long-time anti-abortion activist Joan Bell – who will go to trial with a second group of defendants next month – waited outside the clinic door while other activists, including her co-defendants Herb Geraghty and William Goodman, hid in an emergency stairwell with a bag of locks and chains. ... Two members of the group – Bell and Paulette Harlow – pulled chains out of a bag and affixed them to bike locks they had placed around their necks. They then sat in chairs in front of the door to form a physical blockade with other activists, including one of the [convicted], John Hinshaw."[6]

The recent outpouring of pretrial publicity highlighting the conviction of five of Ms. Bell's codefendants as anti-abortionists blocking women from obtaining abortions, and further *explicitly* connecting her to their "illegal" actions, combined with the demonstrated and reported struggles to seat an impartial jury in the recently completed trial, even when all defendants were presumed innocent, demonstrate that a fair trial before an impartial jury is highly improbable in this instance. This is

---

hinshaw-heather-idoni-herb-geraghty-william-goodman/65-9101a154-5631-4ed6-96d1-767049b42bb1.

especially true in Washington, D.C., a community where the largest portion of the jury pool already supports abortion rights and thus does not have some mere implicit bias against Defendant Bell which can be overcome by prophylactic jury instructions. Rather, this is a community whose convictions and beliefs are largely *fundamentally opposed* to hers, such that her actions would be seen by them as violative of ***their*** personal rights. In such a context, trial in this Court will deprive her of her right to a fair trial before an impartial jury.

**Conclusion**

Defendant Bell requests transfer of this trial to the Northern District of West Virginia at Martinsburg, West Virginia, or to the Middle District of Pennsylvania in Harrisburg, Pennsylvania, and such other and further relief as this Court deems appropriate.

Respectfully submitted,

JOAN ANDREWS BELL
Defendant *pro se*
cxbell@aol.com
(908) 274-6161

9

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing motion was hand delivered to United

States Attorneys John Crabb, Jr. and Sanjay Patel in the U.S. District Courthouse

for the District of Columbia on Tuesday, September 5, 2023.


JOAN ANDREWS BELL
Defendant *pro se*

10

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | |
| | * | No. 22-CR-00096-CKK |
| JONATHAN DARNEL, | * | |
| JEAN MARSHALL, | * | |
| JOAN BELL, | * | * |
| *Defendants.* | * | |

## ORDER

Before this Court is Joan Bell, Defendant *pro se*'s Motion for Transfer of Trial. Having considered the motion, all responses thereto and oral arguments, if any, the Court is of the opinion that the motion should be **GRANTED**.

This matter, as against Defendant Joan Bell, is transferred to the Northern District of West Virginia at Martinsburg, West Virginia.

Signed this _____ day of _____, 2023.

COLLEEN KOLLAR-KOTELLY
District Court Judge