UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES | : |
| v. | : Crim. No. 22-96 (CKK) |
| JOAN BELL | : |

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

COMES NOW Defendant, Joan Bell, through undersigned counsel (who is standby counsel), Stephen F. Brennwald, Brennwald & Robertson, and submits that a sentence of time-served, with an appropriate period of supervised release, would constitute a sentence that is sufficient, but not greater than necessary, to accomplish the goals enumerated in 18 U.S.C. § 3553(a).

*Procedural Background*

Mrs. Bell is before this Court after having been found guilty by a jury of Conspiracy Against Rights, in violation of 18 U.S.C. § 241, and a violation of the Freedom of Access to Clinic Entrances Act, 18 U.S.C. § 248(a)(1).

She faces up to 10 years in jail for the first offense, and one year for the second.

As this Court knows, she was held without bond pending sentencing. As of her sentencing date of May 15, 2024, Mrs. Bell, who is 76 years of age, will have been incarcerated for eight months.

*Sentencing Guidelines*

Defendant Bell adopts the sentencing enhancement arguments presented by co-defendant William Goodman in his sentencing memorandum. ECF Doc. 555, at 3-8.

As to the enhancement for Obstruction of Justice under U.S.S.G. § 3C1.1, defendant notes that this Court has already determined that Mrs. Bell did not tell the truth during portions of her testimony at the trial of Paulette Harlow. ECF Doc. 474, at 8. For that reason, defendant has no doubt that the Court will find this enhancement applicable.

Defendant submits, however, that her testimony was consistent with her memory of the incident. She did not intentionally tell a lie, as she believed that her testimony was the truth (even after she was shown the video recordings).

Neither this Court nor the government knows this, but when defendants Marshall, Harlow and Bell were shown video recordings of the incident by their respective counsel before trial, they thought that the recordings had been altered, as the recordings did not comport with their recollection.

Undersigned counsel will not discuss what the co-defendants told their lawyers at the time they saw the videos, but there is no doubt that their memories of the incident differ from what is shown in the videos.[1]

It is not unusual for people's memory of an event to be different than the actual facts of that event. Several memory studies have demonstrated how fallible witness statements can be. For example, even after witnesses have been shown a video of an incident and are asked a few minutes later to recall the colors of a car, or which car went through a red light, witnesses' recollections are often surprisingly inaccurate.

---

[1] One co-defendant in this case was so convinced that the incident did not happen the way it was depicted in the video recordings that she had her lawyer send the video recordings to a forensic investigator in an attempt to prove that the recordings had been altered.

In order for the obstruction enhancement to apply in this context, the obstruction must have been "willful." Application Note 2 states that:

> "In applying this provision in respect to alleged false testimony or statements by the defendant, the court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice."

Mrs. Bell is 76 years old, and while she is not in any way demented or otherwise mentally impaired, it would not be unusual for her memory to be less reliable than it was when she was younger.

Undersigned counsel can honestly state in this memorandum that Mrs. Bell was convinced that her testimony regarding the events of that day were as she stated them. He knows this because he showed her the video recordings taken inside the clinic multiple times before trial, and each time she viewed them she expressed her belief that the videos did not accurately depict what happened.

Thus, when she testified as she did at Ms. Harlow's trial, she was merely testifying, under oath, as to her recollection of the events. She could have easily agreed to what was shown in the video recordings. But that was not what she recalled, and ironically, she did not want to lie.

Because Mrs. Bell did not knowingly lie, this enhancement is not appropriate.

### Analysis of Sentencing Factors

As this Court knows, pursuant to *United States v. Booker*, 543 U.S. 220 (2005) and *Gall v. United States*, 128 S.Ct. 586, 596-97 (2007), not only are the United States

Sentencing Guidelines no longer mandatory, but they are also not even presumptively reasonable.

Whether or not the sentencing guidelines apply, in determining an appropriate sentence, this Court must consider the factors delineated in 18 U.S.C. § 3553(a), and impose a sentence that:

1) reflects the seriousness of the crime;

2) promotes respect for the law;

3) provides just punishment;

4) deters criminal conduct;

5) protects the public from further crimes, and

6) provides the Defendant with any necessary educational or vocational training, medical care, or other correctional treatment.

In addition, this Court must also consider:

1) the nature and circumstances of the offense;

2) the history and characteristics of the defendant;

3) the kinds of sentences available;

4) the sentencing range;

5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and

6) the need to provide restitution to any victims of the offense.

**The Proposed Sentence Would Reflect the Seriousness of the Crime**

Mrs. Bell submits that a sentence of time-served, followed by a period of supervised release, would be appropriate under the unique facts of this case for the following reasons:

First, as was stated by Mr. Darnel in the recording he made outside of the clinic that morning, this "lock and block" technique had not been used in about 25 years.

Thus, while the government states that Ms. Bell and others need to be deterred from conducting this type of mission again, that particular method of protest had not been used, at least by Mrs. Bell, in about 25 years. While she has been arrested multiple times for her conduct outside of facilities where abortions are performed, she had not participated in a lock and block scenario for a very long time.

Given her age, as well as the prior infrequency of this technique, it is a given that she will not participate, or be able to participate, in such an action again for the rest of her life.

Second, while some in the clinic on the day in question acted somewhat aggressively, Mrs. Bell was very passive. This is not to say that her actions did not contribute to the scene that day. But there is no question that she did not push anyone, or act in any way that caused her to come into contact with anyone from the clinic or any of the patients.

That's because Mrs. Bell is not a violent person – quite the contrary. Many of the letters submitted herewith attest to Mrs. Bell's good character. She is a person who abhors violence, aggression, and death. Her sentence should take that into account.

***The Proposed Sentence Must Also Promote Respect for the Law, Provide Just Punishment to Mrs. Bell, and Deter Criminal Conduct, both by her and by Others.***

These three goals would be met through the imposition of the proposed sentence under the particular circumstances of this case, for the same reasons presented above.

Notably, and perhaps counter-intuitively, respect for the law is actually *diminished* when a sentence is unfairly high. A more severe sentence – such as the one the government recommends - may result in Mrs. Bell dying in prison. She is 76 years old, and not in great health.

As if that were not enough, it is no mystery that the food that is served in prison is not conducive to good health. Month after month of poor eating, especially at her age, will cause her life expectancy to decrease.

Were she released, Mrs. Bell is likely to spend her remaining years taking care of her children and grandchildren, most of whom are special-needs children.

One can deduce this because while this case was pending – a period of 18 months prior to this Court stepping her back pending sentencing,[2] she did not engage in any prohibited conduct whatsoever. She does not know how much time she has left on this earth, but she could do nothing better at this point in her life than to spend it with her children and grandchildren

***The Need to Protect the Public from Further Crimes.***

---

[2] Ms. Bell was arrested on March 30, 2022, and released on bond on April 5, 2022. She was incarcerated by this Court on September 15, 2023.

The same arguments apply to this factor. While she remains passionate about saving children, Mrs. Bell will focus on raising her grand-children, and spending her remaining years with them and with her children. Younger people will take over any fight to save the unborn.

For this reason, there is no need to further incarcerate her.

### *The Court's Duty to Provide the Defendant with any Necessary Educational or Vocational Training, Medical Care, or Other Correctional Treatment.*

Defendant submits that society would be better served not paying for her imprisonment. This imprisonment would certainly necessitate a great expenditure of funds for future medical care. It would be best both for society, and Mrs. Bell, if her medical care was provided by private health care providers. And it would allow Mrs. Bell to live a longer, healthier life.

It is no secret that the medical care provided in prison facilities does not equal that furnished in free society. Confiding someone of her age and health to a Bureau of Prisons facility will, again, reduce her life expectancy. It is a penalty this Court should not overlook or discount.

For that reason, a sentence of time-served is appropriate.

### *The Need to Avoid Unwarranted Disparities*

This factor is often the most difficult to evaluate, but here again, defendant relies on, and incorporates by reference, the information presented in Mr. Goodman's sentencing memorandum, as well as the memoranda submitted by her co-defendants.

### *Conclusion*

Mrs. Bell, a 76-year-old woman who is not in great health, faces sentencing following conviction by a jury after a trial in which she represented herself.

Her conduct in this case has been found to violate the law, but among the participants at the clinic that day, it was on the lower end of criminality.

As the Court can see from a reading of the many letters that have been submitted on her behalf, Mrs. Bell is a woman of great character.

While many will criticize her chosen methods for attempting to prevent abortions, she has put her money where her mouth is, and has adopted not just one child, but six. And five of those six are children with special needs who have required untold hours of her time throughout the years. Yet she has gladly and unselfishly given her life to raise them.

This Court surely does not see Mrs. Bell the way the people who know her best do, but there is no doubt that she is a remarkable woman. A woman who has lived her beliefs despite great personal cost.

Counsel has not met a client who exhibits such compassion in everything she does. Even when she was at the clinic, her demeanor was always one of gentleness and love. It was never brusque, violent, or aggressive.

Defendant asks that she be judged with all of the foregoing in mind.

                                              Respectfully submitted,

                                              /s/

                                              _____
                                              Stephen F. Brennwald, Esq.
                                              Bar No. 398319

Brennwald & Robertson, LLP
922 Pennsylvania Avenue, S.E.
Washington, D.C.  20003
(301) 928-7727
(202) 544-7626 (facsimile)
E-mail:  sfbrennwald@cs.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was sent by email, this 22nd day of April, 2024, to all counsel of record.

/s/

_____
Stephen F. Brennwald