UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| v. | : | **CRIMINAL NO. 22-CR-96 (CKK)** |
| | : | |
| **JOAN BELL,** | : | |
| | : | |
| Defendant. | : | |

**<u>GOVERNMENT'S REPLY TO DEFENDANT BELL'S SENTENCING MEMORANDUM</u>**

The United States of America hereby replies to Defendant Bell's Sentencing Memorandum (ECF No. 556) ("Bell's Mem.").

**I.    Introduction**

Bell raises several arguments in support of a "time-served" sentence. As an initial matter, Bell "adopts the sentencing enhancement arguments presented by co-defendant William Goodman in his sentencing memorandum." *Id*., at 1 (citing Goodman's sentencing memorandum, ECF No. 555). Bell further adopts Goodman's and her co-defendants' arguments requesting variances to avoid unwarranted sentencing disparities. *Id*., at 7. The government responds in kind, incorporating herein its arguments from the United States's reply to Goodman's sentencing memorandum. *See* ECF No. 561.

Bell further expounds upon her opposition to application of the obstruction adjustment under § 3C1.1, claiming that her faulty memory excuses any finding of false testimony provided at trial. Bell's Mem. at 2. This argument is baseless because this Court found that Bell perjured herself at co-defendant Paulette Harlow's trial. Lastly, Bell argues that the Section 3553(a)

1

factors support imposition of her requested sentence. This argument is fails because consideration of the sentencing factors combined with the advisory Sentencing Guidelines support a high-end Guidelines prison sentence.

## II. Bell's Offense Level calculation as determined by the PSR is correct

As set forth in the PSR, Bell's Combined Adjusted Offense Level is 20. (*See* PSR at ¶ 92). Each of the four adjustments that Bell complains about were properly applied. The government incorporates arguments from its reply to co-defendant Goodman's sentencing memorandum in response to Bell's "sentencing enhancement" objections. *See* ECF No. 561, at 2-5.

Additionally, Bell asserts that the obstruction of justice adjustment does not apply to her because "her testimony was consistent with her memory of the incident" and not willful, notwithstanding her concession that this "Court will find this enhancement applicable." *See* Bell's Mem. at 2. Bell claims that she "thought that the [video] recordings [of the blockade] had been altered," and that her faulty memory does not equate to a willful obstruction warranting the upward adjustment. *Id.*, at 2-3. Unfortunately for Bell, her false testimony was an intentional effort to influence this Court's determination of whether co-defendant Harlow violated the FACE Act. *See* U.S.S.G. § § 3C1.1 App. N. 6 ("'Material' evidence, fact, statement, or information, as used in this section, means evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination."); *see also United States v. Smith*, 374 F.3d 1240, 1245 (D.C. Cir. 2004) ("an enhancement for perjury at trial under Section 3C1.1 of the Guidelines can be imposed only if the district court finds that the defendant gave "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a

result of . . . faulty memory") (internal quotations and citations omitted).

Bell knew that despite uncontroverted video footage showing intentional uses of force and physical obstructions, her testimony based upon a supposed faulty memory was self-serving and intended to exculpate Harlow. Her unsupported belief that the video footage was altered is insufficient to relieve her of this Court's finding that she committed perjury. *See* ECF No. 474, Harlow Trial Findings of Fact and Conclusions of Law, at 8 ("Bell . . . . [p]rovided testimony utterly belied by video evidence . . . . Because [Bell] lied on the stand, the Court cannot find any of [her] self-serving testimony credible, and instead only credits [her] inculpatory testimony").

Accordingly, the obstruction of justice enhancement applies and Bell's combined adjusted offense level of 20 is accurate.

### III. Analysis of the Section 3553(a) factors support imposition of a prison sentence at the high-end of her Sentencing Guidelines range

Bell's limited analysis of the Section 3553 sentencing factors to support her requested variance is misplaced. Bell specifically argues that the following factors merit a "time-served" sentence: (1) the infrequency of "lock and block[s]" generally, combined with Bell's passive conduct during the blockade; (2) Bell's poor health; and (3) post-incarceration plans.[1] Bell's Mem. at 5-7. As articulated in the government's sentencing memorandum (Gov. Mem. at ECF No. 544), application of the sentencing factors merits imposition of a top-end Guidelines prison sentence for Bell. Gov. Mem. at 13-21.

---

[1] Without stating more, Bell adopted her co-defendants' arguments requesting a variance to avoid sentencing disparities. The government responds by incorporating responsive arguments made it its briefs, and in particular, those made in the government's reply to Goodman's sentencing memorandum. *See* ECF No. 561, at 6-7.

*1. Seriousness of the crimes warrant a Guidelines sentence.*

Bell suggestion, that her passive conduct during a rare "lock and block" styled clinic invasion supports her requested "time-served" sentence, is meritless. Bell's participation in what her co-conspirators deemed a historic event, coupled with Bell's legacy for having participated in "lock and block rescues" over the prior several decades requires imposition of a high-end Guidelines prison sentence. *See, e.g.*, USA Trial Ex. No. 1017; *see also* 8/16/23 PM Session Trial. Trans. at 76-77:24-3 (co-conspirator Caroline Davis (Davis) testifying that Bell was Idoni's hero, and that Idoni had read books written by Bell while Bell was jailed for her involvement in many historic rescues). Bell is substantively responsible for her co-defendants' conduct regardless of how passive or aggressive Bell was during the blockade.[2] *See Pinkerton v. United States*, 320 U.S. 640, 646-47 (1946); *United States v. Khatallah*, 41 F.4th 608 (D.C. Cir. 2022)

---

[2] Of course, Bell did not have to personally perform all the actions necessary to establish this adjustment; based on Relevant Conduct, she is responsible for her co-conspirators' actions:

> A defendant is responsible for
>
> (B)  in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were—
>
> (i)  within the scope of the jointly undertaken criminal activity,
>
> (ii)  in furtherance of that criminal activity, and
>
> (iii)  reasonably foreseeable in connection with that criminal activity;
>
> that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense . . . .

U.S.S.G. § 1B1.3 (a)(1).

("[A] conspirator can be found guilty of a substantive offense based upon acts of his coconspirator so long as the act was done in furtherance of the conspiracy, was within the scope of the unlawful project, and could be reasonably foreseen as a necessary or natural consequence of the unlawful agreement."). Her admission that "[co-conspirators] in the clinic on the day in question acted somewhat aggressively" does not excuse her liability for their actions. *See* Bell's Mem. at 5. Because Bell admittedly "contribute[d] to the scene that day," and was the inspiration for using chains and locks to blockade the clinic, she should be sentenced at the high-end of her Sentencing Guidelines range.

Bell's argument that "she will not participate, or be able to participate, in such an action" must be rejected because she has demonstrated to this Court that she will not cease engaging in similar conduct. *See* Bell's Mem. at 5. As established at trial through admission of Rule 404(b) evidence, the week preceding the charged blockade and nearly one year thereafter, Bell, on two other occasions, obstructed clinic access. First, just days before the charged blockade, Bell and co-defendant Goodman were arrested for blockading an abortion clinic in New Jersey. Then, nearly a year after the Washington, D.C., Surgi-clinic blockade, Bell was arrested with co-defendants Lauren Handy, Jonathan Darnel, and several others for blockading a Virgina abortion clinic. Bell has demonstrated that she will not stop. Even at 76 years of age, Bell seeks to reinvigorate the extreme anti-abortion movement that she led decades earlier.

Bell's significant arrest history both before and after the Surgi-clinic blockade is proof that she will reoffend, and a high-end Guidelines prison sentence will effectively deter her from committing future crimes.

2. *Alleged poor health is an insufficient basis for a "time-served" sentence.*

In asking for a significant variance, Bell argues that conditions of the federal prison system will not adequately attend to her alleged poor health. Without explaining any particular ailments she suffers from beyond her age, Bell states that food and medical care provided by the Bureau of Prisons will not satiate her health needs. This argument is flawed because as this Court knows, the federal prison system is well equipped to manage any of Bell's supposed health concerns. Bell has not articulated why a high-end Guidelines sentence is unwarranted here.

3. *Bell's future family plans provide no assurance that the public will be protected from further criminal activity.*

Bell also argues that a variance is appropriate because she has family plans following her release from prison, and she will now allow other "younger people" to "take over *any fight* to save the unborn." Bell's Mem. at 6-7 (emphasis added). This provides no assurance that Bell will cease her criminal activity. Bell has a significant history in this criminal arena. Her arrest history demonstrates her commitment to extreme anti-abortion activism, and her age and claimed future family plans provides no justification for her requested variance. Moreover, her steadfast commitment to inspire "younger people" to "take over *any fight*" demonstrates that a time-served sentence will not serve any sentencing purpose. Rather, it will send a contrary message to others who would "take over" the "fight" for Bell.

Moreover, Bell's stated commitment to raising her grand-children and spending time with family is contradicted by the Rule 404(b) incidents, discussed above. Those arrests combined with her arrest following the Surgi-clinic blockade were meaningless to Bell. She did not think about spending her remaining years with family then, and she does not now. As established at

6

trial, Bell and her co-defendants well knew that they were committing federal offenses as they planned the Surgi-clinic blockade. *See, e.g.*, 8/16/23 PM Session Trial. Trans. at 83:12-22 (Davis testifying that the FACE Act and accompanying penalties was discussed at the pre-blockade meeting); 9/12/23 Trial. Trans. 55-57:13-1 (same). Bell's knowledge and awareness of the associated penalties did not deter her from invading the Surgi-clinic. This Court should reject Bell's misguided attempt to distort the truth.

## IV. Conclusion

Here, a sentence at the high-end of the Guidelines will achieve a sentence that reflects the Section 3553 sentencing factors. In particular, such a sentence reflects the gravity of the offense (to include vindicating the rights of those whom Bell victimized), the need for deterrence, and the absence of any mitigating factors.

Respectfully submitted,

KRISTEN CLARKE
ASSISTANT ATTORNEY GENERAL
CIVIL RIGHTS DIVISION
*/s/ Sanjay H. Patel*
SANJAY H. PATEL
IL Bar. No. 6272840
Trial Attorney
Criminal Section, Civil Rights Division
Email: Sanjay.Patel@usdoj.gov

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052
*/s/ John Crabb Jr.*
JOHN CRABB JR.
NY Bar No. 2367670
REBECCA G. ROSS
NY Bar No. 5590666
Assistant United States Attorneys

601 D Street, NW  
Washington, DC 20001  
John.D.Crabb@usdoj.gov  
Rebecca.Ross2@usdoj.gov